## Laros *versus* The Commonwealth.

1. It is competent for one expert to testify to the skill of another where the knowledge of the witness is derived from personal observation.

2. An admission by a prisoner not competent as a confession is admissible when its truth is proved by the revelation of the fact by search.

3. A court is not bound to hear evidence upon which to ground a presumption of the possible insanity of a prisoner until direct evidence of the prisoner's insanity has first been given.

4. In presenting the matters of fact relied on for and against the prisoner's insanity, the court submitted the fact of the sanity or insanity of the prisoner on the day he purchased the poison as well as on the day it was administered as bearing directly upon the issue. *Held,* that this was not erroneous.

5. It was not error to instruct the jury that the terrible nature of the crime will not stand as the proof itself, or an element in the proof of the fact of insanity.

6. Where a jury have found a verdict against the plea of insanity, when set up as a defence to conviction, and it is alleged in bar of sentence that insanity has occurred since the verdict, the trial of this fact by a jury is not of right, but rests within the discretion of the court.

March 27th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Oyer and Terminer of *Northampton county:* Of January Term 1877, No. 86.

Indictment of Allen C. Laros, for the murder, by poison, of his father, Martin Laros.

At the trial before Meyers, P. J., it appeared from the evidence that on the 31st of May 1876, the family of the deceased, consisting of himself, his wife Mary, his children Irvin, Alvin, Clara, Alice, the prisoner Allen, a grandchild Flora, and a man named Moses

[Laros v. Commonwealth.]

Schug, who boarded with the family, all sat down to take supper. Shortly thereafter one after another of those at the table, in quick succession, were taken suddenly and violently ill. The symptoms of all were alike, differing however in degree, the mother, father and Schug being most violently affected, and the small child Flora and the prisoner the least. All the family were compelled to leave the table. This sudden attack of sickness was followed almost immediately with vomiting and purging, griping pains, cold and clammy skin and excessive prostration. From the effect of this sickness Mary Ann Laros, the wife of Martin Laros, died at seven o'clock on the following morning, Martin Laros about one in the afternoon, and Moses Schug on the following day in the afternoon. Two of the family testified as to the peppery taste on their lips and tongues and burning sensation in the throat produced by drinking the coffee at the supper, and two physicians testified to a like sensation experienced from actual experiment with white arsenic in solution. It was in evidence that all partook of the coffee except perhaps the prisoner. A post mortem examination discovered traces of arsenic in the stomach of the deceased. In the coffee-pot, which had been used by the family, a white sediment was found, which upon analysis was discovered to be arsenic, and from appearances about four ounces and a half had been deposited therein. The analysis was made by Dr. McIntire, a reputable physician of Easton, and Mr. Davidson, of Lafayette College, according to the most approved scientific tests, and both pronounced the sediment to be arsenic. It was shown that the prisoner, a day or two before the poisoning, had purchased in a drug store in Easton of Dr. Voorhees about four and a half ounces of arsenic, for the purpose, as he alleged, of killing rats, and that at the same time he had bought a bottle of Brown's Camphorated Dentifrice. The prisoner, subsequent to the poisoning, made declarations to witnesses about having made such a purchase of the dentifrice about the time named and the bottle was found in the house of the deceased. He also made certain declarations about the concealment of money belonging to the deceased and Moses Schug, and money was found at the place indicated. William Schug testified that in reply to a question as to what he meant by doing a deed of that kind, alluding to the poisoning, the prisoner said, " Bill, I don't know why I done it; I had no cause to do it, and I am sorry it is the way it is; but it is too late." It appeared that the prisoner was at home an hour or two previous to the supper and could have had opportunity to have deposited the poison in the coffee-pot.

The defence was that the prisoner, at the time he committed the act, was insane and therefore not criminally responsible, and much testimony was given in regard to his being subject to epileptic fits

[Laros *v.* Commonwealth.]

and the effects therefrom on the mind of the prisoner. It was also attempted to be shown that there was an hereditary tendency to insanity in the family of the prisoner. The assignments of error were thirty-three in number, but those only are noted here which are passed upon by this court.

The 7th assignment was that the court erred in permitting Dr. Green to testify as to the knowledge and qualifications of Dr. McIntire to make a chemical analysis.

The 8th, in permitting Dr. Green to testify to the correctness of the tests made by Dr. McIntire.

The 9th, in permitting Dr. Green to testify whether the methods used by Mr. Davidson to ascertain the existence of arsenic were scientifically correct.

The 10th, in permitting Dr. Voorhees to testify that the prisoner, before the coroner's inquest, when under oath and suspected of the murder, admitted to him or in his presence that he had purchased a bottle of "Brown's Dentifrice" from him in Easton, similar to the one then produced.

The 11th, in permitting the Commonwealth to prove by William Bitters, the deputy constable, certain admissions of the prisoner relative to the concealment of money belonging to his father and Moses Schug.

The assignments, from the 13th to the 19th inclusive, embraced the following offers of evidence, which the court refused. To prove by the brother of the prisoner that the paternal grandfather of the prisoner acted in a manner indicating unsoundness of mind; to show while the prisoner was a member of his father's family how his father educated and brought up his family with reference to religious and moral instruction and conduct; to show whether the treatment of the prisoner by the father and the rest of the family was kind or not; to prove that the brother of the prisoner committed suicide by hanging himself without any apparent cause; to prove that the uncle of the mother of the prisoner is insane and has been for years; to prove that the brother of the prisoner's grandmother on his father's side committed suicide by hanging himself without any known motive; all these offers as evidence for the jury upon the question of the insanity of the prisoner.

The 20th, that the court erred in refusing the defendant's third point, which was as follows:—

3. That the case of the Commonwealth being one of circumstantial testimony, it must to a moral certainty exclude every other hypothesis but the one of the death of the deceased by arsenious acid through the criminal agency of the defendant.

The 21st was the answer to the fourth point, which was as follows:—

4. If the jury find beyond a reasonable doubt that Martin Laros

[Laros *v.* Commonwealth.]

was poisoned by the defendant, and further find by the weight of the evidence that at the time the act was committed the prisoner was incapable of judging whether or not the particular act which occasioned death was criminal, or if he knew it was criminal, but was impelled to the consequences which he saw and understood, but could not avoid, and was placed under a coercion from mental ·disease, which, while the results of the act were clearly perceived, he was incapable of resisting, the verdict must be, "Not guilty, by. reason of insanity."

Answer. "So much of the point ending with the word 'criminal,' in the seventh line, is affirmed. The remaining part of the point is not affirmed, as the evidence submitted to the jury is not applicable to the legal principle (if true) contained in the part of the point."

The assignments, from the 22d to the 26th, inclusive, were the refusals by the court of the following points of defendant:—

5. That murder by poison is only presumptively murder in the first degree, and if upon the whole of the evidence the jury are not satisfied beyond a reasonable doubt that the mind of the prisoner at the time of the act was so free from mental disease as to allow him to deliberately premeditate the death of the deceased, and they ·are satisfied beyond a reasonable doubt of the poisoning of Martin Laros by the defendant, the verdict must be guilty of murder in the second degree, if they should not find him not guilty by reason of insanity.

8. If from the evidence in the case the jury should find beyond a reasonable doubt that Martin Laros died of poison administered by the defendant, but should have a reasonable doubt as to the sanity or insanity of the prisoner at the time of the commission of the alleged act of poisoning, it is their duty to convict of murder in the second degree.

9. The ability to distinguish between right and wrong in the particular act is not the sole test of criminal responsibility, and if, the fact of poisoning having been found beyond a reasonable doubt, the jury are satisfied by the preponderance of the evidence in the case that the prisoner, although cognizant of the moral quality of the act at the time, was not able to resist the impulse to commit the act by reason of mental derangement, it is their duty to render a verdict of not guilty by reason of insanity.

11. If the jury are satisfied by the weight of the evidence that at the time of the commission of the alleged act of poisoning the prisoner was laboring under mental derangement, whether partial or general, of a degree sufficient to have controlled his will, and to have taken from him freedom of moral action, the verdict of the jury should be not guilty by reason of insanity.

12. If by reason of mental derangement existing at the time the defendant had not power to control the disposition to commit the

particular act, he is not responsible therefor, and the verdict must be not guilty by reason of insanity.

The 27th assignment was the following portion of the general charge :—

" There is no evidence in the case showing that even if Allen C. Laros was at any time laboring under a general or partial insanity, he was ever subject to delusions or to homicidal mania, or that in consequence of such delusion or homicidal mania he committed the act with which he is charged. The only and remaining question is, was Allen C. Laros, at the time of committing the act, laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it that he did not know he was doing wrong."

The 28th assignment was the portion of the general charge following in brackets :—

" We have already stated to you that the defendant is presumed to be sane, and the burden is on him to prove to your satisfaction that he was insane. [You cannot, however, infer insanity from the heinous and atrocious character of the crime, or to constitute it as an element in the proof of actual insanity.]"

The 30th, was the portion of the general charge following in brackets :—

" In either event, whether you find that the prisoner had or had not epilepsy, it will be your duty to examine all the testimony carefully in all its details to ascertain the condition of Allen C. Laros's mind from 1872 up to the 31st of May 1876. You will ascertain how many attacks of convulsions he had, their force, character and duration, whether he had any stupor or disorder of the mind immediately preceding and succeeding each convulsion, as well as their character and duration. You will ascertain what effect these convulsions had upon his mind, health, disposition and temper. You will examine into all his acts and conversations as detailed by the witnesses, whether in the school room, at home, in the highways or wherever the witness placed him, up to the 31st of May last and immediately afterwards. [You will compare the testimony of witnesses as to his sanity or insanity, carefully scrutinizing the facts upon which they were found, and after having exhausted all the evidence bearing on the question of sanity and insanity, it will be for you to say whether or not Allen C. Laros has satisfied you by the weight of the evidence that on the evening of the 31st of May, as well as on the day it is alleged that he purchased the white arsenic, he was insane and not criminally responsible for the commission of the crime charged against him.]"

The jury rendered a verdict of murder in the first degree. When the prisoner was called for sentence his counsel filed the following plea in bar of sentence :—

" Now, the 30th day of October A. D. 1876, the defendant,

[Laros v. Commonwealth.]

being present in court, and being now asked here what he has to say for himself why the court should not proceed to judgment and execution upon the verdict of the jury for murder in the first degree, he, by his counsel for plea in bar of the sentence of the court, saith that since the commission of the offence for which the defendant was indicted, and since the verdict aforesaid, he has become, and is now insane, and this he is ready to verify and prove. Whereupon he prays judgment, &c."

The district attorney filed the following replication :—

" And now, October 30th 1876, the Commonwealth, by John C., Merrill, district attorney, for answer to the plea of the defendant why sentence should not be pronounced upon him, says that the said defendant has not become and is not now insane, and the said Commonwealth, therefore, prays that the judgment of the law be pronounced by the court upon the said defendant."

To this replication the defendant's counsel demurred, on the grounds,

1. That the district attorney tenders no issue by his replication and no mode of trial.

2. That the replication should tender a trial by the country, being a traverse of matter of fact.

3. That it prays judgment of the court upon the question as a matter of law.

4. That the said replication is, in other respects, uncertain, informal and insufficient.

The court overruled this demurrer.

The prisoner's counsel on the same day filed another plea in bar of sentence, which averred that at the time of the charge of the court to the jury and at the time of the delivery of the verdict the said defendant was laboring under temporary insanity, produced by epilepsy or some other nervous disease, and was totally incapable of understanding and was actually unconscious of the proceedings attending the charging of the court and the rendition of the verdict, and this he is ready to verify and prove, wherefore he prays judgment, &c.

The district attorney moved that this plea be stricken off, for the reason that the matters therein alleged cannot now be heard, as they are without the jurisdiction of the court, which motion the court sustained.

The prisoner was then called by the court, who proceeded to interrogate him for the purpose of testing the question of his insanity.

They then sentenced the prisoner to be hanged.

The defendant then took this writ, the assignments of error being those heretofore noted, and the following relative to the proceedings subsequent to the verdict.

31. The court erred in overruling the demurrer of the defendant

[Laros *v.* Commonwealth.]

to the replication by the Commonwealth to the prisoner's plea in bar of the sentence filed October 30th 1876.

32. In proceeding to sentence the prisoner without directing a trial of the question of his insanity, as raised by his plea in bar of the sentence, before a jury.

33. In interrogating the prisoner for the purpose of trying the question of his insanity, as raised by his plea in bar of sentence.

*W. S. Kirkpatrick* and *Henry W. Scott*, for plaintiff in error.— After a witness has been admitted to testify as an expert, evidence cannot be given to the jury of the opinions of other experts in the same science, as to whether the witness was qualified to draw correct conclusions in the science on which he had been examined : Tullis *v.* Kidd, 12 Ala. 648 ; DePhue *v.* State, 44 Id. 32.

The objection to the questions covered by the 8th and 9th assignments, was in permitting the witnesses to testify to conclusions which were the province of the jury to determine. Confessions and admissions made before the coroner by the person suspected are not admissible : Commonwealth *v.* Harman, 4 Barr 269 ; Greenleaf's Ev., vol. 1, sect. 226 ; Rex *v.* Tubby, 5 C. & P. 530 ; Reg *v.* Owen, 9 Id. 238 ; Reg *v.* Garbett, 2 C. & K. 474 ; Rex *v.* Lewis, 6 C. & P. 161 ; Rex *v.* Davis, Id. 177.

In the offer excepted to in the eleventh assignment it was proposed to prove the admissions of an independent and distinct offence : East's Pleas of the Crown 658. It is always pertinent to give in evidence, in issues involving insanity, the instances of mental unsoundness in the direct ancestry of the party whose sanity is in question, especially when offered in corroboration of other evidence tending to show insanity : Wharton & Stille's Med. Jur., vol. 1, sect. 373, quoting the opinion of GIBSON, C. J., in Smith *v.* Kramer, 1 Am. Law Reg. 353, where this doctrine is ably vindicated. The social and family surroundings are an important element in passing upon the conduct of men and determining whether their conduct indicates sanity or insanity. The education and religious instruction to which a person was subject is certainly important in determining whether the conduct submitted as evidence of insanity is the natural and probable result of early neglect and vicious influences, or whether it is exceptional, extraordinary and counter to the usual influences on character resulting from proper education and training.

Evidence of insanity is not to be limited to the immediate relations of the prisoner : Whart. on Med. Jur., vol. 1, sect. 375 ; Baxter *v.* Abbott, 7 Gray (Mass.) 81 ; Christiana Edmunds's Case, referred to in Whart. on Med. Jur., vol. 1, sect. 375.

Suicide is an act so contrary to all human instincts that it has almost the force of a presumption of insanity.

The doctrine contained in the 4th, 9th, 11th and 12th points

[Laros *v.* Commonwealth.]

has been abundantly sustained in this state: Mosler *v.* Commonwealth, 4 Barr 267; Ortwein *v.* Commonwealth, 26 P. F. Smith 424; Brown *v.* Commonwealth, 28 Id. 122; Commonwealth *v.* Winnemore, 1 Brewster 370; Commonwealth *v.* Freth, 3 Phila. 105; Whart. Med. Jur., vol. 1, sect. 160.

The atrocity of an act when isolated and alone would not be proof of insanity; perhaps it would not be evidence from which it could be inferred. But when connected with the other facts in this case it was highly proper "as an element in the proof," and in connection with the offer contained in the 14th and 15th assignments of error, which we were prepared to prove as proposed, but were refused.

The court erred in the 30th assignment. The defendant was to prove by the weight of the evidence that he was suffering from a temporary insanity, produced by epilepsy, at the time of the commission of the crime; this the jury might have found, if to it had not been added the other requirements by the charge of the court, which the defendant was not called upon to prove either by the weight of the evidence or by any evidence. It was no part of the case. If the prisoner had purchased the poison, it might have been for an innocent purpose; and if for a guilty purpose, it may have been totally different from that alleged by the Commonwealth; and if purchased for the identical guilty purpose charged against him, he was entitled to be acquitted upon the ground of insanity, if he proved himself mentally irresponsible at the time of the crime.

For trial by jury on the question of insanity, the court below substituted that "by inspection and examination." In this we submit the court was in error, as the defendant was entitled to a venire for jurymen to whom to submit the proofs for his plea. The constitutional rights of the prisoner were violated in the examination to which he was subjected by the court.

*J. C. Merrill,* District Attorney, and *Edward J. Fox,* for defendant in error.—Dr. Green was not asked for his opinion, but what was his knowledge of Dr. McIntire's capacity. The rule of law, which excludes admissions made before a coroner at the inquest, will not apply to the admissions made by this prisoner: Rex *v.* Butcher, 1 Leach 301; Warickshall's Case, 2 East P. C. 268; Rex *v.* Gould, 9 C. & P. 364; Hudson *v.* State, 9 Yerger 408; 1 Greenl. Evid. 231; Archibald's Crim. Prac. & Plead., vol. 1, p. 424. A moral or immoral education would in no way tend to show an insane taint in the prisoner's constitution; nor would the kindness or unkindness of his family towards him reflect upon his sanity. The questions do not involve any act or conduct of the prisoner indicating unsoundness of mind. A crime because unnatural is in itself no proof of insanity: Commonwealth *v.* Mosler, 4 Barr 268; Ortwein *v.* Commonwealth, 26 P. F. Smith 425. In Commonwealth

[Laros *v.* Commonwealth.]

*v.* Mosler, *supra*, it was held that a man was not responsible if impelled by a coercion drawing the mind to consequences which it *saw*, but could not avoid or resist; but here it is contended he is not responsible, if it not only saw, but *understood* them.   This is an unreasonable limit to which to extend the doctrine of irresistible impulse as an excuse for crime.

There was no evidence to show that at any time or upon any occasion the defendant had not freedom of will or moral action. Because he was subject to hallucinations or delusions does not disprove this fact.   A man may be sane upon a single topic and insane upon another ; unless insane upon the subject of crime he would be responsible : Whart. Crim. Law, sect. 23.

The evidence in this case does not support the theory in regard to epileptic fits, and their effect upon the mind of the prisoner, or their effect generally.

It would be impossible for courts to try and sentence criminals, if each man might, by pleading insanity after verdict, compel the empanelling of a jury to try the facts.

A method is provided to ascertain the truth of such an allegation after verdict by the Act of May 14th 1874, Pamph. L. 160, sect. 1 ; and as the prisoner did not adopt this method, the court, after satisfying its conscience by inspection and examination, had a right to pronounce sentence, and this examination and inspection, we submit, is a question that is left to the discretion of the court and trial by jury is not of right : Bond *v.* Tennessee, Mart. & Yerg. 143 ;  Freeman *v.* People, 4 Denio 19, 20 ;  4 Black. Com. 395.

Chief Justice AGNEW delivered the opinion of the court, June 11th 1877.

On reading these assignments of error the first impression is that some of them must be sustained.   But a careful review of the testimony, running in its current and along with the bills of exceptions as they were taken, discloses that they are groundless.   The case was carefully tried, and the rulings fair and substantially correct. In such a case as this slight inaccuracies, doing no substantial hurt to the prisoner, ought not to turn aside the course of justice.   The desperate condition of offenders often leads to many shifts to escape. Insanity is a common resort, but the burthen of its proof lies on the prisoner, and it is not every proposition he makes must be allowed, especially when it tends to mislead the jury.

Some of the assignments were not proper and others pressed are not tenable.   We shall confine our discussion to those most strongly urged.   The objection to the question to Dr. Green as to his knowledge of Dr. McIntire's learning in the science of chemistry and his qualification to make an analysis quantitative and qualitative is not sustained.   Dr. McIntire had testified to his own knowledge and competency, and the testimony offered was only confirmatory.   The

question related to Dr. Green's knowledge, as a matter of fact, derived from observation. It was not a question of mere reputation, but of Dr. Green's own knowledge, acquired from full opportunity of observation. If I have seen a workman doing his work frequently, and know his skill myself, surely, if I am myself a judge of such work, I can testify to his skill.

The 8th and 9th assignments have even less ground of support. Dr. Green being himself a skilful expert, it was competent for him to testify to the correctness of the tests used by Dr. McIntire, as stated by him in his testimony.

The 10th assignment is unsubstantial. It is needless to inquire into the competency of the testimony of the prisoner, before the coroner's inquest, when Dr. Voorhees himself testified to the fact admitted by the prisoner. The doctor sold him the bottle of dentifrice when he sold him the arsenic, and identified the prisoner as the purchaser. Nor is it necessary to inquire into the competency of the confession made to William Bitters, relative to the concealment of the money, referred to in the 11th assignment, when it is proved that in consequence of the information search was made at the place described by the prisoner, and the money found there. An admission not competent as a confession is admissible when its truth is proved by the revelation of the fact by search.

The assignments of error from the 13th to the 19th inclusive may all be disposed of in a breath. They were all offers collateral or secondary to the proof of insanity, and were not admissible until direct evidence of the prisoner's insanity had been given. A court is not bound to hear evidence of the insanity of a man's relatives, or evidence of his proper instruction in morals and religion, or of the kind treatment of his relatives and friends, as grounds of a presumption of possible insanity, until some evidence has been given that the prisoner himself has shown signs of his own insanity. Now when these offers were made; no evidence of his own insanity had been given. That he had at long intervals before the week of the murder suffered spasms or fits of some kind affecting him bodily is all that had been proved, but no mental unsoundness has been shown. These offers were not renewed after evidence was given of an affection resembling epilepsy, and a possible epileptic insanity. Indeed the evidence of even a possible epileptic insanity was so weak it would scarcely have been substantial error to reject the evidence a second time. It must not be forgotten that according to the evidence, or even according to common observation, epilepsy is not commonly followed by insanity, until after a long time from the first attack, and that the proof of epilepsy furnishes no immediate presumption of insanity. There was no error in the rejection of these offers when made.

The 20th assignment is not supported by the fact asserted in the point. The case was not one wholly of circumstantial evidence.

3 Norris—14

There was the prisoner's admission of his act made to William Schug. In answer to Schug's question, what he meant by doing a deed of that kind, he said: "Bill, I don't know why I done it; I had no cause to do it, and I am sorry it is the way it is; but it is too late." The circumstances themselves were very strong. The purchase of the poison, its quantity, the quantity found in the coffee-pot, and the facts attending the poisoning, were very direct.

The assignments from the 21st to the 27th inclusive are subject to the same infirmity : the insufficiency of the evidence of insanity. The only possible question was that of epileptic insanity, and this the court submitted to the jury very fairly. It may be said of all these points, in view of the evidence, they were abstract and unsubstantial.

The 28th assignment presents an apparent difficulty. Standing isolated from the charge it seems to be unsound. But taken in its proper connection, and according to the meaning of the court, the latter branch of the sentence which contains the alleged error is not justly chargeable with error. The court had said, the only remaining question is upon the insanity of the prisoner, that he is presumed to be sane, and the burden is on him to prove to your satisfaction that he is insane. Then the objected sentence follows : "You cannot however infer insanity from the heinous and atrocious character of the crime, or to constitute it as an element in the proof of actual insanity." The court did not mean to say that when proof of insanity is given the horrid and unnatural character of the crime will lend no weight to the proof; but meant only that the terrible nature of the crime will not stand as the proof itself, or an element in the proof of the fact of insanity. There is a manifest difference between that which is actual evidence of a fact and that which merely lends weight to the evidence which constitutes the proof. This is all the court meant. That part of the charge contained in the 30th assignment is not objectionable when read with its context and properly understood. The court did not say that the jury *must* find insanity on the day of the purchase of the poison in order to acquit. On the contrary, the jury were instructed in several parts of the charge that the insanity must have existed at the time of the commission of the offence. The paragraph containing the sentence objected to was employed in presenting the matters of fact relied upon by both sides as evidence upon the question of epileptic insanity previous to the time of the poisoning. The fact of sanity or insanity on the day of the purchase of the poison had a very direct bearing on the fact of insanity when the poison was administered. Hence the court properly submitted the fact of sanity or insanity on both days, as bearing directly upon the issue, but not as both necessary to an acquittal.

The last three assignments of error raise a single question upon the power of the court to inquire by inspection and *per testes* into

[Laros *v.* Commonwealth.] .

the insanity of the prisoner since verdict. · We have no precedents in this state, known to us, how the inquiry shall be conducted when such a plea in bar of sentence is put. in.   It seems to us, however, that no right of trial by jury is involved in the question.   A jury having found a verdict against the plea of insanity when set up as a defence to conviction, subsequent insanity cannot be set up in disproof of the conviction.   The plea at this stage is only an appeal to the humanity of the court to postpone the punishment until a recovery takes place, or as a merciful dispensation.

The rights of the prisoner as an offender on trial for an offence are not involved.   He has had the benefit of a jury trial, and it is now the court only which must be satisfied on the score of humanity.   If the right of trial by jury exist at all, it must exist at all times, no matter how often the plea is repeated alleging insanity occurring since the last verdict.·  Such a right is incon-sistent with the due administration of justice.   There must be a sound discretion to be exercised by the court.   If a case of real doubt arise, a just judge will not fail to relieve his own conscience by submitting the fact to a jury.

> The sentence of the Court of Oyer and Terminer is affirmed, and the record is ordered to be remitted, for the purpose of carrying the sentence into execution according to law.