## Conley's Appeal

*John Youngman,* for plaintiff.
*Abraham H. Lipez,* for defendant.

Lewis, J., fifty-fifth judicial district, specially presiding, November 10, 1937.—Under a continuing contract dated September 5, 1934, the petitioner, Mrs. Conley, taught in the primary grades (1st, 2d, and 3d) of the Noyes Township School at Westport for three school years. On February 25, 1937, the board of school directors caused notice to be served upon her terminating that contract as of May 28, 1937. In the meantime the amendment of April 6, 1937, P. L. 213, to the School Code of May 18, 1911, P. L. 309, became effective. On June 16, 1937, the board again moved to terminate the contract by presenting to the petitioner an official written notice accompanied by detailed written statement of the charges upon which her dismissal was based and a notice designating a time and place when and where the petitioner and her counsel would have opportunity to be heard before the board. In accordance with that notice a hearing was held on July 30, 1937, in which both the petitioner and the board participated and were represented by counsel. Thereafter, the board, by unanimous vote on roll call, sustained the charges and dismissed the petitioner from her professional employment, giving her notice thereof under date of August 5, 1937.

From that action of the board Mrs. Conley appealed, and on her request a hearing de novo was had.

The charges preferred against Mrs. Conley were:

"1. Wilful and persistent negligence
    "(*a*) Time lost by your intense interest in activities other than your school work.

"2. Incompetency
    "(*a*) Public school teacher's attitude.
    "(*b*) School routine.

"3. Cruelty
    "(*a*) In punishment of children."

At the hearing this court was inclined to hear whatever testimony counsel for either side thought proper to offer, but in disposing of the matter we must winnow out that which is competent upon the question of the petitioner's professional competency or incompetency. That, we feel, is the only question before us, since it does not appear that she was absent from her work enough to maintain the first charge and since the sporadic incidents of alleged overpunishment of certain children seem hardly sufficient to indicate a settled course of conduct and sustain the third charge.

The petitioner is, by the terms of the act of assembly, a professional employe and it is her professional competency, her professional skill, that is here in question. The evidence presented upon that question is of three classes:

First. Opinions of persons not experienced in the teaching profession.

Second. Testimony concerning isolated incidents from which the court is asked to find that the petitioner is either competent or incompetent.

Third. Opinions of persons experienced in the teaching profession; including the statement of the petitioner herself.

It is the general rule that witnesses must testify to facts and not to conclusions, inferences, or opinions. An exception to that rule exists where, because of the nature of the question involved, the court requires the aid of persons who have acquired special knowledge or experience in regard to the subject matter under consideration which ordinary witnesses do not have. A question of that nature is here involved. Before such an expert witness may be permitted to testify to his opinion, it must appear that he is qualified by having had opportunity or means of acquiring special knowledge or experience with reference to that particular subject matter. As to professional skill

the rule is stated in Henry's Pennsylvania Trial Evidence, sec. 345:

"An expert may state whether or not in his opinion another expert was qualified to perform certain acts, if such opinion is based on knowledge acquired from observing such acts."

In Wigmore on Evidence (2d ed.), sec. 1984, we find the following statement:

"Testimony to *professional skill*, concerning either party or witness, when furnished by professional persons qualified to know, is also generally regarded as receivable."

Both of these authors cite, in the notes to these sections, Laros v. Commonwealth, 84 Pa. 200, in which appears Chief Justice Agnew's classic statement of the rule: "If I have seen a workman doing his work frequently, and know his skill myself, surely, if I am myself a judge of such work, I can testify to his skill."

Manifestly the first class of evidence above referred to is not proper to be considered; the third class is.

The second class of evidence is only competent if it is proper for this court to measure this petitioner's professional qualifications by our own opinion of teaching standards. Certain things in this record appear to reflect rather gravely upon those qualifications. For example, the janitor, the nurse, the aunt, the mother, who rally to the petitioner's support and testify to what they saw in her schoolroom, together build up a sum total of visitations which seem hardly consistent with good methods. Another example, section 1614 of the School Code, supra, provides that every teacher shall, at the end of each school month, or within five days thereafter, make an attendance report. Examination of the "School Attendance Register" prepared and distributed as the official act of the Department of Public Instruction for the school year July 6, 1936, to July 5, 1937, discloses upon the title page the following significant statements:

*"The Monthly Attendance Report Cards*

"The teacher's monthly attendance report cards for the year have been placed in the book and a card should be filled out by each teacher on the last day of each calendar month and forwarded not later than the third day of the following month to the Superintendent or principal having jurisdiction.

*"Penalty for Failure to Forward Monthly Attendance Report Cards*

"Section 1436 requires that each school district shall report in such detail upon attendance as the Superintendent of Public Instruction shall request, and Section 1431 provides that he may withhold the State appropriation of a district that fails to comply with this requirement. No teacher's salary should be paid for the current month until the attendance report card has been forwarded."

What shall we conclude as to a teacher of three years' experience who, when charged with being two days to two weeks late with half her attendance reports, tells us, "The attendance reports are supposed to be mailed in, I understood the week after, that is the first week of the next month, and somewhere I got the information from some book that they were required to be in only by the 15th." Other similar examples might be mentioned were we not convinced that the rule quoted above must govern in the determination of this controversy. If the courts are to hear nonexpert testimony describing teachers' methods and from such testimony determine the competency of teachers, then the courts and not educators or the Department of Public Instruction will be setting the teaching standards for the public schools of the Commonwealth.

In addition to the petitioner's own testimony two expert witnesses, Mrs. Schnars and Mrs. Knight, speak for her. Mrs. Stewart was also heard, but it appears she has not taught school during the last 25 years; she hardly qualifies as an expert. Mrs. Schnars was graduated from the

Lock Haven State Teachers College in 1910 and thereafter taught for nine years. For the past seven years she has served as a substitute teacher in the Westport school. The sum of her testimony is that when she substituted for Mrs. Conley she found a written program of the work upon the teacher's desk, the children in the room behaved well and were making good progress. Mrs. Knight, the petitioner's mother, is a graduate of the Lock Haven State Teachers' College and had some summer courses at the Pennsylvania State College. She taught for 28 years. How long she has been out of the profession does not appear. She says the discipline in her daughter's room was good, the pupils' reaction was good and they made steady progress. She also says her daughter used the latest and most approved methods. Mrs. Conley herself testifies concerning her methods and denies many of the things that were said in derogation of her competency, yet it appeared from her words and manner that she did not realize that a public school teacher has certain obligations to her school and her pupils from which unpleasant relations with some individual members of the board of school directors do not release her.

Miss Noyes was principal of the Westport school during all the time Mrs. Conley taught there and although she does not say in the very words that the petitioner is incompetent, it appears that is the conclusion to be drawn from her testimony.

Mr. Bartges says the petitioner is incompetent and his evidence must have great weight with this court. He was trained in the Lock Haven State Teachers' College, Susquehanna University, and the Pennsylvania State College, where he earned the B. A. and B. S. in E. degrees. He has had 17 years' experience as a principal and supervising principal. He has served as superintendent of schools of Clinton County since September 5, 1935, and therefore evidently, by appointment. We believe him when he says that the petitioner is not competent. Furthermore, if

there were any doubt in the mind of the court upon the question of the petitioner's competency, that doubt should be resolved against her for here we are dealing not alone with the rights of the teacher and the board. We cannot be unmindful of the interests of the children of Noyes Township. They are not parties to the record, but the court has become charged with the duty of protecting their right to be instructed by teachers whose competency is not doubtful.

### Order

And now, November 10, 1937, in accordance with the foregoing opinion, the action of the board of school directors is affirmed, and it is ordered that the professional employe, Mary Knight Conley, be discharged.